## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

YONG MI SHANNON,                                    Case No. 09-CV-12710
                                                    Hon. Lawrence P. Zatkoff

      Debtor.

_____/

ACCLAIM LEGAL SERVICE, P.L.L.C.,

                                                    Bankruptcy Case No. 09-40867

      Appellant,                               Hon. Steven W. Rhodes

vs.

DAVID W. ALLARD,
Chapter 7 Trustee,

      Appellee.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the      day of March, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Acclaim Legal Services, P.L.L.C.'s ("Acclaim") Appeal

from the Order Regarding Amended Motion to Turnover (Docket #1) entered by Steven W. Rhodes,

a Judge for the U.S. Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court").

David W. Allard, the Chapter 7 Trustee of the debtor's bankruptcy estate (the "Trustee"), filed a

response, and Acclaim filed a reply.  The Court finds that the facts and legal arguments pertinent

to the Motion are adequately presented in the parties' papers, and the decision process will not be

aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons set forth below, Acclaim's Appeal is DENIED.

## II. BACKGROUND

Yong Mi Shannon ("Debtor") filled a voluntary petition for relief under Chapter 7 of the Code on January 14, 2009. Debtor's original schedules failed to disclose and exempt her 2008 federal and state tax refunds for wages earned pre-petition. The first meeting of creditors was held on February 11, 2009, before the Trustee. At that first meeting of creditors, the Trustee questioned Debtor regarding her right to receive tax refunds based on her pre-petition income withholdings. Debtor indicated that she had not yet prepared her tax returns. Debtor further indicated that she would possibly be receiving tax refunds, would promptly file her 2008 federal and State of Michigan tax returns and would provide copies of the same to the Trustee. Acclaim, Debtor's counsel, was present during the first meeting of creditors on behalf of Debtor and assisted Debtor in answering the Trustee's questions.

Debtor prepared and filed her tax returns sometime shortly after the first meeting of creditors. On February 19, 2009, just eight days after the first meeting of creditors, Debtor received her federal tax refund in the amount of $3,374.00, and on March 10, 2009, Debtor received her State of Michigan tax refund in the amount of $353.00. Despite Debtor having filed her tax returns and received refunds, Debtor's counsel failed to provide the Trustee with copies of Debtor's tax returns. Debtor's counsel claims that the tax returns were forwarded to the Trustee's office on several occasions, but Debtor's counsel has been unable to provide any documentation substantiating these

claims.[1]

By written letter dated March 20, 2009, the Trustee requested turnover of Debtor's 2008 income tax refunds because Debtor had not exempted any 2008 tax refunds. In that letter, the Trustee also sought concurrence in a motion for turnover of the tax refunds in accordance with E.D. Mich. L.B.R 9014-1(g). Acclaim did not respond to the Trustee's written letter, nor were Debtor's tax refunds turned over to the Trustee. On May 15, 2009, the Trustee filed a motion for turnover of Debtor's tax refunds. The Trustee's motion was amended on May 26, 2009, to also request turnover of copies of Debtor's 2008 federal and state tax returns. Debtor filed her response on June 10, 2009, and the Bankruptcy Court scheduled a hearing on the Trustee's amended motion for June 29, 2009 (the "Turnover Hearing"). On June 19, 2009, Debtor filed amended schedules B and C, which, for the first time, disclosed to the Bankruptcy Court her 2008 federal and 2008 State tax returns and tax refunds. Debtor sought to exempt the same, pursuant to 11 U.S.C. §522(d)(5), in the total amount of $9,695.00.

At the Turnover Hearing, the Trustee advised the Bankruptcy Court of the recently amended schedules and informed the Bankruptcy Court that the Trustee anticipated filing an objection to those amendments. The Trustee sought an adjournment of the Turnover Hearing until the Trustee could file its objection to Debtor's amended claims of exemption. The Trustee explained that a ruling for Debtor on the exemption issue could result in a withdrawal of the Trustee's motion for turnover. The Bankruptcy Court thereafter questioned Debtor and her counsel regarding the filing

[1]Acclaim has only been able to locate a transmittal to the Trustee on August 7, 2009. The first time the Trustee's attorneys were able to review Debtor's 2008 tax returns was August 7, 2009, over one month after the Turnover Hearing and more than five months after Debtor filed her tax returns. In addition, the copies of the 2008 tax returns turned over to the Trustee were unsigned and undated.

of her tax returns, her receipt of tax refunds, and the reasons they were not listed as a contingent asset on Debtor's bankruptcy schedules when she had admittedly received comparable refunds in prior years.[2]

The attorney appearing on behalf of Acclaim at the Turnover Hearing, Ryan Beach ("Beach"), stated that the tax refunds were "somewhat of an unknown." Beach further claimed he was only speculating because he was not the individual who prepared Debtor's petition. The Bankruptcy Court responded that this situation "is a continuation of the sloppiness of practice in [Acclaim's] office." The Bankruptcy Court then stated: "I'm going to order your office to turn over to the Trustee the amount of the refund. And then if the exemption is allowed, we'll give it back to you. If the exemption is disallowed, I'm going to surcharge it to your office for sloppy practice." On June 29, 2009, the Bankruptcy Court entered a corresponding order requiring Acclaim to "pay to the office of the chapter 7 trustee the full amount of the 2008 federal and state income tax refund received by the debtor ($3,727.00), pending the Court's resolution of the trustee's objection to th[e] debtor's exemption" (the "Turnover Order").

On July 8, 2009, Acclaim filed its Notice of Appeal, appealing the Turnover Order to this Court.[3] On July 9, 2009, Acclaim filed a "Motion for Stay of Order Pending Appeal" in the

---

[2]Schedule B, list of personal property, asks a debtor to list his or her property as of the petition date under several different categories. Line 18 reads: "Other liquidated debts owed to debtor **including tax refunds**. Give particulars." Debtor indicated there were none. Line 21 similarly reads: "Other contingent and unliquidated claims of every nature, **including tax refunds**, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." Debtor again indicated there were none.

[3]Pursuant to Fed. R. Bankr. P. 8006, after filing its notice of appeal, Acclaim was required to file its designation of the record on appeal and its statement of issues on appeal in the Bankruptcy Court by July 20, 2009. On July 17, 2009, Acclaim made these filings on the District Court docket but failed to make these filings in the Bankruptcy Court, as required

Bankruptcy Court, asserting that it would be irreparably injured were it required to comply with the Turnover Order. On July 16, 2009, the Trustee filed an Objection to Debtor's Amended Claims of Exemption. On July 24, 2009, the Trustee filed an Objection to Debtor's Motion for Stay of Order Pending Appeal, and on the same day, Debtor filed a response to the Trustee's Objection to Debtor's Amended Claims of Exemption. The Bankruptcy Court scheduled a hearing on the Motion for Stay of Order Pending Appeal and the Objection to Debtor's Amended Claims of Exemption for August 10, 2009 (the "Joint Hearing").

At the Joint Hearing, the Bankruptcy Court referred back to the Turnover Order, stating that the intent of that order was to be "an appropriate *sanction* to address [Acclaim's] incompetence in the case" (emphasis added). The Bankruptcy Court further clarified that the intent of the sanction was to order Acclaim to "remedy dollar for dollar the damage caused to [Debtor] and the estate by [Acclaim's] incompetence." The Bankruptcy Court explained that "the Court must act under Section 105 [of the Bankruptcy Code] to assure that all participants in the bankruptcy process do what they're supposed to do and fulfill their obligations." The Bankruptcy Court then denied Debtor's motion for stay pending appeal, finding that: (a) there was no substantial likelihood of success on the merits of this appeal, and (b) Acclaim would not be prejudiced by refusal to stay the order. The Bankruptcy Court also ordered that the Trustee's objection to Debtor's amended claims of exemption be held in abeyance pending resolution of this appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from "final judgments, orders, and decrees"

---

pursuant to Rule 8006. This is further evidence of the sloppiness of Acclaim's practice.

of bankruptcy judges or "with leave of the court, from interlocutory orders and decrees" 28 U.S.C. §158. "For purposes of appeal, a final order 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *In re Swegan*, 383 B.R. 646, 649 (6th Cir. BAP 2008) (citing *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798 (1989)).

On appeal to the district court from an order of the Bankruptcy Court, "the district court is required to review the bankruptcy court's legal conclusions *de novo* and review factual questions on a clearly erroneous standard." *In re Araj*, 371 B.R. 240, 241 (E.D. Mich. 2007) (*citing In re Burns,* 322 F.3d 421, 425 (6th Cir. 2003)). An award of sanctions is reviewed for abuse of discretion. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 55 (1991).

## IV.  ANALYSIS

### A.  Not a Final Order

In this case, the Court finds that the order Acclaim appeals from (the Turnover Order) is not a final order.  Rather, the sanction of Acclaim set forth in theTurnover Order will not be final until the Bankruptcy Court makes a ruling on the Debtor's amended claims of exemption; *i.e.*, if the Bankruptcy Court grants Debtor's amended claims of exemption, the financial penalty against Acclaim dissolves.  For that reason, the Court need not address the current appeal.  As this issue is likely to come before the Court again, however, the Court shall treat Acclaim's appeal as seeking leave to appeal and consider the instant appeal on the merits.

### B.  Effect of Untimely Appeal

Fed. R. Bankr. P. 8009 provides that "[t]he appellant shall serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007." For purposes of this appeal,

Acclaim's 15 days began to run on July 27, 2009, when the Clerk of the Bankruptcy Court entered the record on appeal. Time computation is governed by Fed. R. Bankr. P. 9006. Fed. R. Bankr. P. 9006 provides that day of the appeal is filed is not counted in the total days and that if the final day is a Saturday, Sunday, or legal holiday, then it does not count; instead, the following day which is not one of the aforementioned days is the deadline. At the time this appeal was filed, Rule 9006 provided that when the time to be computed is more than 8 days, intermediate Saturdays, Sundays, and legal holidays are included in calculating the deadline. Applying these rules, Acclaim's brief was due on Tuesday August 11, 2009. Acclaim did not file its brief until Friday, August 14, 2009, however, without leave from this Court. Although the Court shall not strike the brief or appeal on this basis, the Court finds such untimeliness is reflective of the sloppy practices for which the Bankruptcy Court criticized Acclaim *vis a vis* Acclaim's representation of Debtor.

## C. Bankruptcy Court's Sanctions Were Appropriate

The primary issue before this Court is whether the Bankruptcy Court erred in ordering Acclaim to pay the Trustee as sanctions the cash equivalent of Debtor's undisclosed 2008 income tax refunds to the Trustee pending a hearing on the Trustee's objection to Debtor's amended claims of exemption.

### 1. *Power of Bankruptcy Court to Impose Sanctions*

Federal courts possess the inherent power to sanction bad faith conduct which arises during the course of litigation. *See Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991). In the bankruptcy context, section 105(a) of the United States Bankruptcy Code (the "Code")[4] has been found to grant

---

[4] 11 U.S.C. §105(a) provides:

The court may issue any order, process, or judgment that is necessary

bankruptcy courts the same inherent powers recognized by the Supreme Court in *Chambers*. *See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.*), 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers.*"); *Caldwell v. Unifies Capital Corp. (In re Rainbow Magazine, Inc.*), 77 F.3d 278, 284 (9th Cir. 1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court."); *Matter of Volpert*, 110 F.3d 494, 500 (7th Cir. 1997) ("The broad power to 'issue any order … appropriate to carry out the provisions' of Title 11 and 'to prevent an abuse of process' certainly encompasses the power to issue an order to sanction an attorney . . .").

As Acclaim notes, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-5 (internal citations omitted). *See also In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996) ("When a court metes out a sanction, it must exercise such power with restraint and discretion. . . . The sanction levied must thus be commensurate with the egregiousness of the conduct.").

2.      *Duty to Disclose*

When preparing bankruptcy schedules, a debtor is under an affirmative duty to disclose all of his or her assets to the Bankruptcy Court. *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002).  Tax

---

or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

refunds are property of the estate: "[e]very court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." *Araj v. Kohut* (*In re Araj*), 371 B.R. 240, 243 (E.D. Mich. 2007). "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting such obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). However, when preparing bankruptcy schedules, it can be expected and assumed that debtors will rely upon their attorneys for help in drafting their schedules and assigning values to assets. "Regardless of who draft[s] the schedules, [an attorney's] obligation to competently represent his client require[s] him to review these documents with his client before they become a part of the public record." *U.S. Trustee v. Bresset*, 246 B.R. 784, 794 (Bankr. M.D. Penn. 2000).

### 3. *Findings and Rulings of the Bankruptcy Court Were Not Erroneous*

The Bankruptcy Court stated that monetary sanctions would be an appropriate remedy against Acclaim for any amounts Debtor was later adjudged to owe to the Trustee because of Acclaim's "sloppy practice" and the resultant harm to Debtor and Debtor's bankruptcy estate. There were two separate Acclaim office practices with which the Bankruptcy Court was displeased, both of which contributed to the problems with Debtor's bankruptcy estate. The first, as conceded by Acclaim at the Turnover Hearing, was that Acclaim had a systematic practice to disclose only tax refunds it expected debtors would actually receive. Even if that was true, however, it would not explain the failure to disclose or exempt the tax refund in this case. It was almost a certainty that Debtor would receive a roughly $3,500.00 tax refund (she had gotten a similar refund for years and had the same employment for the previous 8 years), 100% of which was earned pre-petition.

Moreover, at Debtor's first meeting of creditors, the Trustee questioned Debtor about the possibility of receiving tax refunds for 2008. Such questioning clearly put Debtor, and the attorney appearing on behalf of Acclaim at the meeting, on notice that the Trustee was interested in the tax refunds as bankruptcy estate property. Accordingly, Acclaim was obligated to inform Debtor that the possible refund should be listed on her bankruptcy schedules. The Court finds that there is no reasonable or excusable basis for the failure to disclose the refund. *Cf. In re Colvin*, 288 B.R 477, 483 (Bankr. E.D. Mich. 2003) ("from a legal perspective, reliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith.").

The second troubling practice of Acclaim cited by the Bankruptcy Court involves assigning different attorneys to handle different aspects of the case. That is, Acclaim's practice (which was followed by Acclaim in handling the Debtor's case) is to have one attorney sign a debtor's bankruptcy petition, a different attorney attend the meeting of creditors, and a different attorney come to court when issues arise. Acclaim's practice culminated in Beach's attempt to sidestep the Bankruptcy Court's questions by pointing out that he was not the attorney who prepared Debtor's schedules and, accordingly, was unable to accurately explain why the tax refunds were not disclosed.

The Court concludes that Acclaim's sloppy practices, including those associated with this appeal (see footnote 3 and Section IV.B.), sufficiently support: (1) the Bankruptcy Court's finding of bad faith on the part of Acclaim, (2) the imposition of sanctions for such sloppiness, and (3) the amount of sanctions ($3,727.00), an amount this Court finds reasonable.

> ### 4. *Acclaim Arguments*

Acclaim argues that the Bankruptcy Court was required to order Debtor, and not Acclaim,

10

to pay any amounts owed to the Trustee because it was Debtor who actually took possession of the property. In the present case, however, Acclaim expressly contracted to assist Debtor in preparing and filing her bankruptcy petition, including her bankruptcy schedules. As noted above, tax refunds are part of the bankruptcy estate. As such, Acclaim was, or should have been, aware of such assets when it was assisting its own clients (including Debtor), many of whom ultimately become debtors in bankruptcy, in preparing their bankruptcy schedules.

In this case, the Bankruptcy Court determined that Debtor might ultimately be harmed by the errors of Acclaim. Therefore, under the circumstances, the Bankruptcy Court ruled that Acclaim should be liable for its own mistakes and not Debtor. The Court concludes that the Bankruptcy Court's determination was not erroneous. *See In re Cluett*, 90 B.R. 505 (Bankr M.D. Fl. 1988) (sanctioning attorney for improper schedules because, under the circumstances presented, the court found it inappropriate to sanction the debtors).

Acclaim also argues that the Bankruptcy Court based its Turnover Order on Code § 542. The Court concludes, however, that it is clear that the Bankruptcy Court relied on Section 105 of the Code when sanctioning Acclaim. Although the Bankruptcy Court did not state the basis for this holding in the Turnover Order itself, it is clear from the record that the Bankruptcy Court was not basing its holding on Code §542 or ordering Debtor's counsel to turnover property of the estate pursuant to that section. In fact, Acclaim was told by the Bankruptcy Court at the Joint Hearing on August 10, 2009, that Acclaim: (1) was not being required to turn over estate property for Debtor, and (b) was being sanctioned. As such, the Court rejects Acclaim's argument that the Bankruptcy Court based its Turnover Order on Code § 542.

Acclaim next asserts that the Turnover Order does not state what happens to the sanctioned

money in the event that Debtor's amended claims of exemption are ultimately upheld. Even if the Turnover Order did not do so, however, the Court notes that the Bankruptcy Court expressly stated, on the record, at the Turnover Hearing: "I'm going to order your office to turn over to the trustee the amount of the refund. ***And then if the exemption is allowed, we'll give it back to you***. If the exemption is disallowed, I'm going to surcharge it to your office for sloppy practice" (emphasis added). Accordingly, the Court finds that the Bankruptcy Court clearly set forth that Acclaim was to pay, as sanctions, a fixed amount to the Trustee and that Acclaim would get that amount back if Debtor's amended claims of exemption were ultimately upheld.

Finally, contrary to Acclaim's assertion, enforcement of the sanction against Acclaim will not result in a violation of the Michigan Rules of Professional Responsibility, specifically Rule 1.8(e). The Bankruptcy Court sanctioned Acclaim, it did not order Acclaim to pay an amount due by Debtor. Therefore, the Court finds that Acclaim has not been ordered to, nor will it have to, provide financial assistance to Debtor "in connection with pending or contemplated litigation[.]" Accordingly, the Court concludes that this argument lacks merit.

*5. Conclusion*

In this case, the Court finds that the bankruptcy process was disrupted because Acclaim's poor practices resulted in Debtor facing potential liability where none should have existed. The Court therefore concludes that: (1) Acclaim's continued incompetence and sloppy practice in this case justifies the imposition of a reasonable monetary sanction,[5] particularly as it may deter Acclaim from engaging in similar practice(s) in the future, and (2) the imposition of a sanction that correlates

---

[5]The Bankruptcy Court stated that this was a "*continuation* of the sloppiness of practice in [Acclaim's] office." (emphasis added). As discussed herein, such sloppiness continued in Acclaim's pursuit of this appeal.

to the harm caused by Acclaim was a reasonable exercise of the Bankruptcy Court's inherent power under Code §105.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Acclaim's Appeal (Docket #1) is DENIED and this cause of action shall be DISMISSED WITH PREJUDICE.  In addition, Acclaim's Motion to Stay of Order Pending Appeal (Docket #17) is hereby DENIED AS MOOT.  Judgment shall be entered accordingly.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 25, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 25, 2010.


S/Marie E. Verlinde
Case Manager
(810) 984-3290